JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE CANTU, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUXOTTICA OF AMERICA INC., an Ohio corporation,<br><br>Defendant. | Case No. 2:25-cv-09100-HDV-SK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE [17]** |

## I. INTRODUCTION

Plaintiff Jesse Cantu filed this putative consumer class action against Defendant Luxottica of America Inc. alleging that Defendant engaged in false and misleading pricing practices on its e-commerce website, https://www.oakley.com (the "Website"), by advertising fictitious regular prices and illusory discounts. First Amended Class Action Complaint ("FAC") ¶¶ 1, 8–9 [Dkt. 1-18]. Defendant moves to transfer this action to the United States District Court for the Southern District of Ohio pursuant to a forum-selection clause in Defendant's Terms of Use, and alternatively, pursuant to 28 U.S.C. § 1404(a). Defendant Luxottica of America Inc.'s Motion to Transfer Venue ("Motion") [Dkt. 17].

Considering the balance of factors, the Court finds that transfer to the Southern District of Ohio is warranted both under the parties' valid forum-selection clause and independently under the § 1404(a) convenience factors. The forum-selection clause alone mandates transfer absent extraordinary circumstances, and Plaintiff has identified none. Moreover, the interests of justice—including the location of Defendant's witnesses and evidence, Defendant's strong ties to Ohio, and Ohio's significant local interest in regulating the conduct of corporations headquartered within its borders—favor transfer. No factor weighs heavily against it.

For the reasons further stated below, the Court grants Defendant's Motion.

## II. BACKGROUND

Plaintiff, a California resident, alleges that he purchased a pair of sunglasses from Defendant's Website on April 10, 2025, believing that he was receiving a genuine discount off a regular price when, in fact, the advertised "regular" price was fictitious and the products were never sold at that price. FAC ¶¶ 2, 8–9. Plaintiff brings this action on behalf of a putative class of all persons who purchased products from Defendant's Website "while in California" within the applicable limitations period. *Id*. ¶ 45. He asserts two causes of action: (1) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; and (2) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. *Id*. ¶¶ 53–72.

During the checkout process on the Website, customers are presented with notice of Defendant's Terms of Use at multiple steps. Declaration of Edoardo Carraro ("Carraro Decl.") ¶¶

1

17–25, Exs. A–C [Dkt. 17-3]. The initial checkout screen informs customers that "By clicking the button above you agree to our Terms of Use and Privacy Policy," with hyperlinks to those documents underlined immediately below the "COMPLETE ORDER," "PayPal," and "Verify with ID.me" buttons. *Id.* ¶¶ 17–19, Ex. A. Those three buttons are highlighted with bright red, yellow, and green colors, and the Terms of Use link below is in gray on a white background. *Id*. Once a customer selects "COMPLETE ORDER," a subsequent delivery page, above the "GO TO SHIPPING METHOD" button, states that "By proceeding to payment you agree to Oakley's Conditions of Use & Sale, Privacy Notice and Cookies & Internet Advertising, and consent to receive email with news and offers about our products," with the relevant terms hyperlinked and again in gray on a white background. *Id.* ¶¶ 21–22, Ex. B. The "Conditions of Use & Sale" links to Defendant's Terms of Use. *Id.* ¶ 23. Once a customer selects "GO TO SHIPPING METHOD," they are then prompted to enter their credit card information and complete the checkout.

Defendant's Terms of Use, which were effective as of February 2024 and were in effect at the time of Plaintiff's purchase, contain a forum-selection clause requiring that "any action relating to use of this website or any transaction must be brought in the state or federal courts serving Warren County, Ohio." *Id.* ¶¶ 26–27, Ex. D at 8.

Defendant is incorporated in Ohio and headquartered in Mason, Ohio. FAC ¶ 3; Carraro Decl. ¶ 2. Defendant's eCommerce team, which is responsible for maintaining the Website and making decisions about pricing displayed thereon, works in Defendant's offices in New York and Italy. Carraro Decl. ¶¶ 4–5. Defendant's Information Technology team, tasked with managing the Website's infrastructure, "has a number of employees who work in Mason, Ohio." *Id.* ¶ 6. Defendant's Customer Service leadership team—which handles all customer questions and complaints from North American e-commerce, including for Oakley—is entirely based in Mason, Ohio. *Id.* ¶ 7. No individuals involved in pricing or advertising decisions for the Website work or reside in California. *Id.* ¶ 9. Defendant claims relevant corporate records are located in its corporate offices in Ohio, New York, or Europe. *Id.* ¶ 12.

**III.     LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may

| | |
|---|---|
| 1 | transfer any civil action to any other district or division where it might have been brought." 28 |
| 2 | U.S.C. § 1404(a). Transfer does not require that the original forum be wrong. *Atl. Marine Const.* |
| 3 | *Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Where the parties have agreed to |
| 4 | a valid forum-selection clause, the Court "should ordinarily transfer the case to the forum specified" |
| 5 | and "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § |
| 6 | 1404(a) motion be denied." *Id.* at 62. When a forum-selection clause applies, the plaintiff's choice |
| 7 | of forum merits no weight, and courts consider only arguments and factors bearing on the public |
| 8 | interest. *Id.* at 64. |
| 9 | Otherwise, the analysis under § 1404(a) is two-fold. First, the court must find that the action |
| 10 | "might have been brought" in the transferee district—meaning the transferee court has personal |
| 11 | jurisdiction over the defendant and venue is proper there. *Hoffman v. Blaski*, 363 U.S. 335, 343–44 |
| 12 | (1960). Second, the court must balance the convenience of the parties and witnesses and the interest |
| 13 | of justice. 28 U.S.C. § 1404(a). Relevant considerations include: (1) the location where the relevant |
| 14 | agreements were negotiated and executed; (2) the state most familiar with the governing law; (3) the |
| 15 | plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) contacts relating |
| 16 | to the plaintiff's cause of action in the chosen forum; (6) the differences in litigation costs between |
| 17 | the two forums; (7) the availability of compulsory process to compel attendance of unwilling non- |
| 18 | party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum-selection |
| 19 | clause; and (10) the relevant public policy of the forum state, if any. *Jones v. GNC Franchising,* |
| 20 | *Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). The decision to transfer requires "an individualized, |
| 21 | case-by-case consideration of convenience and fairness." *Id*. at 498 (citing *Stewart Org., Inc. v.* |
| 22 | *Ricoh Corp.*, 487 U.S. 22, 29 (1988)). No single factor is dispositive. *Atl. Marine*, 571 U.S. at 62– |
| 23 | 63. |
| 24 | **IV.  DISCUSSION** |
| 25 | The Terms of Use governing at the time of Plaintiff's April 10, 2025 purchase provide that |
| 26 | "any action relating to use of this website or any transaction must be brought in the state or federal |
| 27 | courts serving Warren County, Ohio." Carraro Decl., Ex. D at 8. This forum-selection clause is |
| 28 | valid, enforceable, and directly applicable to Plaintiff's pricing claims, which arise from and relate to |

3

1  Plaintiff's use of the Website and his purchase transaction.  Plaintiff does not dispute that the forum-
2  selection clause exists or that it is facially applicable.  Instead, he argues that he never formed a
3  binding agreement because the Website failed to provide him with either actual or constructive
4  notice of the Terms of Use, and because there was no unambiguous manifestation of assent.
5  Opposition at 2–19 [Dkt. 23].  The Court finds that the argument lacks merit.

6        A consumer assents to a website's terms of use when: (1) the website provides "reasonably
7  conspicuous notice" of the terms; and (2) the consumer takes an action that "unambiguously
8  manifests his or her assent."  *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th
9  Cir. 2022); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023).  Courts assess the
10 conspicuousness and placement of the Terms of Use hyperlink, other notices given to users of the
11 terms of use, and the website's general design in determining whether a reasonably prudent user
12 would have inquiry notice.  *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156 (9th Cir. 2025) (citing
13 *Oberstein*, 60 F.4th at 515).

14       The notices on the Website satisfy the "reasonably conspicuous" standard.  The notices
15 appear in close proximity to the relevant action buttons.  The first notice—"By clicking the button
16 above you agree to our Terms of Use and Privacy Policy"—appears immediately below the checkout
17 buttons (COMPLETE ORDER, PayPal, and Verify with ID.me) that a customer must click to
18 proceed.  Carraro Decl., Ex. A.  The second notice—"By proceeding to payment you agree to
19 Oakley's Conditions of Use & Sale"—appears directly above the "GO TO SHIPPING METHOD"
20 button.  *Id.*, Ex. B.  Notices placed immediately adjacent to action buttons have been routinely found
21 sufficient.  *See Oberstein*, 60 F.4th at 517 (notice sufficient where it was "located directly on top of
22 or below each action button"); *Morrison v. Yippee Entm't, Inc.*, No. 24-7235, 2025 WL 2389424, at
23 *1 (9th Cir. Aug. 18, 2025) (sufficient notice where hyperlink was "located directly above the 'Start
24 subscription' button").

25       The notices are also visually sufficient.  The gray text and underlined hyperlinks are legible
26 against the white background, contrast with surrounding elements, and appear at the same size as
27 other surrounding text.  This is not a case—like *Berman*—where the notice was "printed in a tiny
28 gray font considerably smaller than the font used in the surrounding website elements" and "barely

4

legible to the naked eye." 30 F.4th at 856–57. Nor is the checkout design so visually cluttered that the notices would be obscured. *See Morrison*, 2025 WL 2389424, at *1 (notices sufficient where webpage was not "so visually cluttered that it distracted from the hyperlink"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (notice sufficient where webpage was "uncluttered").[1]

The Court further finds that Plaintiff unambiguously manifested his assent to the Terms of Use. The first notice expressly states that "By clicking the button above you agree to our Terms of Use and Privacy Policy." Carraro Decl., Ex. A. This language explicitly ties the act of clicking to assent to the terms, which includes the forum-selection clause. *See Berman*, 30 F.4th at 856–58. The presence of three checkout buttons (COMPLETE ORDER, PayPal, and Verify with ID.me) does not create ambiguity because clicking any of them confirms the transaction. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017). The second notice—"By proceeding to payment you agree to Oakley's Conditions of Use & Sale"—is likewise unambiguous. Although the action button is labeled "GO TO SHIPPING METHOD" rather than "proceed to payment," the button is the only means by which a customer can advance toward completing the purchase, making it objectively clear that proceeding with the transaction means accepting the stated terms. *See Oberstein*, 60 F.4th at 515–16. The fact that this notice uses the phrase "Conditions of Use & Sale" rather than "Terms of Use" does not render the notice ambiguous where both phrases linked to the same document—the Terms of Use. *See* Carraro Decl. ¶ 23.

In summary, the Court concludes that because the Website provided reasonably conspicuous notice of the Terms of Use, and because Plaintiff unambiguously manifested assent to those terms by clicking through multiple checkout steps, the forum-selection clause is valid and enforceable.

---

[1] Plaintiff contends the hyperlinks must be displayed in blue font to be sufficiently conspicuous. Opposition at 13–14. But courts have found underlined hyperlinks in gray or black fonts on white backgrounds to be adequately conspicuous. *See Slaten v. Dick's Sporting Goods, Inc.*, No. 2:23-cv-04861-WLH-MAA, 2024 WL 1136399, at *1, 4 (C.D. Cal. 2024) (notice with underlined hyperlink in black font on light gray background reasonably conspicuous); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (terms enforceable where hyperlinks appeared in small gray font).

Where a valid forum-selection clause exists, the plaintiff's choice of forum merits no weight, and a § 1404(a) motion should be granted unless the plaintiff demonstrates "extraordinary circumstances unrelated to the convenience of the parties [that] clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52, 63. Such circumstances exist only if the agreement was procured by fraud, is overreaching, or would effectively deprive the plaintiff of his day in court. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018). Plaintiff makes none of these showings. He identifies no fraud or overreaching, and offers no evidence that litigating in the Southern District of Ohio would prevent him from fairly presenting his claims.[2]

## V. CONCLUSION

For the foregoing reasons, the Motion is granted, and the case is transferred to the U.S. District Court for the Southern District of Ohio.[3]

Dated: March 4, 2026

Hernán D. Vera
United States District Judge

---

[2] Because the Court finds that the forum-selection clause is enforceable, it need not analyze Defendant's alternative argument that the Section 1404(a) factors independently support transferring the action to the Southern District of Ohio. However, the Court notes that several other courts have granted transfer upon an analysis of the Section 1404(a) factors in similar circumstances. *See, e.g.*, *Vasseur v. Johnson & Johnson Consumer, Inc.*, No. 2:24-CV-07487-MCS-BFM, 2025 WL 576548, at *1, 3 (C.D. Cal. Feb. 12, 2025); *Greben v. Cinmar, LLC*, No. 2:24-CV-10140-MRA-BFM, 2025 WL 1765916, at *4 (C.D. Cal. May 30, 2025); *Montenegro v. Johnson & Johnson Consumer, Inc.*, No. 2:24-CV-01895-SB-BFM, 2024 WL 4720925, at *6 (C.D. Cal. Sept. 16, 2024).

[3] Because the Court grants the Motion to Transfer, Defendant's Motion to Dismiss [Dkt. 18] is denied as moot.

6